COURT OF APPEALS
DECISION
DATED AND FILED

February 16, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2022AP492**
**2022AP493**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2021JG42
2021JG43

**IN COURT OF APPEALS
DISTRICT IV**

---

NO. **2022AP492**

IN THE MATTER OF THE GUARDIANSHIP OF **R.M.Z.**:

**B. K.,**

PETITIONER-RESPONDENT,

**B. K.,**

RESPONDENT,

V.

**A. Z.,**

RESPONDENT-APPELLANT.

---

No. 2022AP493

IN THE MATTER OF THE GUARDIANSHIP OF H.G.Z.:

B. K.,

PETITIONER-RESPONDENT,

B. K.,

RESPONDENT,

V.

A. Z.,

RESPONDENT-APPELLANT.

APPEALS from orders of the circuit court for La Crosse County: GLORIA L. DOYLE, Judge. *Affirmed in part; reversed in part and cause remanded with directions*.

Before Kloppenburg, Fitzpatrick, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. In these consolidated appeals, A.Z. challenges the circuit court's orders appointing the petitioners-respondents, A.Z.'s nephew and his wife, as guardians of her two teen-aged children under WIS. STAT. § 48.9795

(2021-22).[1] A.Z. argues that the circuit court erred in four respects: (1) the court improperly relied on "outdated evidence" in determining that A.Z. is unable to care for the children; (2) the court did not make a specific determination that A.Z.'s nephew and his wife are fit, willing, and able to care for the children; (3) the court did not make a specific determination that appointing A.Z.'s nephew and his wife as guardians is in the best interests of the children; and (4) the court did not establish visitation rules for A.Z. and the children that are reasonable or enforceable.

¶2      We conclude that the record refutes A.Z.'s first three arguments and, therefore, we affirm as to those issues. We also conclude that the court erroneously exercised its discretion as to visitation because its orders allow the children's therapists to determine when or whether visitation happens without setting reasonable rules as required by WIS. STAT. § 48.9795(4)(h)2.c. Accordingly, we reverse on this issue and remand to the circuit court to make a visitation determination consistent with statutory requirements.

---

[1] The legislature in 2019 Wis. Act 109, effective August 1, 2020, "removes guardianships of a minor's person from [WIS. STAT.] ch. 54, and creates a new statute governing guardianships of a child's person in a new subchapter under [WIS. STAT.] ch. 48," which is the Children's Code. *See* 2019 Wis. Act 109. That statute is WIS. STAT. § 48.9795.

Private guardianship of the estate of a minor remains in Chapter 54, WIS. STAT. § 54.10(1), but is not relevant to this appeal. In this opinion, all references to "guardianship" refer to the guardianship of the minor's person, and we refer to guardianship of a minor and of a child interchangeably.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

3

## BACKGROUND

¶3      A.Z.'s children lived with A.Z. and her husband (the children's father) until late March 2021, when her husband died by suicide. When he died, the children went to live with their aunt. A couple of weeks later, the children moved in with their cousin, A.Z.'s nephew, and his wife. The children have lived with A.Z.'s nephew and his wife since approximately the beginning of April 2021.

¶4      In October 2021, A.Z.'s nephew and his wife filed petitions in the circuit court seeking to be appointed guardians of the children.[2]  Accompanying the petitions for guardianship were statements by the nephew and his wife as well as statements by the children nominating the nephew and his wife as guardians.[3] When the petitions were filed, the circuit court appointed the same guardian ad litem to each of the guardianship cases.[4] At the time the petitions for guardianship were filed, the children were sixteen years old and fourteen years old.

¶5      The hearing for the two guardianship cases took place over the course of two days in January and early February 2022. The following witnesses testified at the hearing: A.Z.'s former employee and friend, A.Z.'s neighbor, the

---

[2]  La Crosse County filed a petition for protection or services for each child in May 2021, and the County subsequently voluntarily dismissed the petitions in favor of these guardianship actions.

[3]  Under WIS. STAT. § 48.9795(4)(d), the proposed guardian must submit a statement containing certain specified information.

Under WIS. STAT. § 48.9795(2)(c)2., a child at or over the age of twelve may nominate a guardian and, "[i]f neither parent of a child who has attained 12 years of age is fit, willing, and able to carry out the duties of a guardian, the court may appoint the nominee of the child."

[4]  Under WIS. STAT. § 48.9795(3)(a), the circuit court "shall appoint a guardian ad litem when a petition is filed for appointment a guardian[.]"

pastor at the family's church, the family's physician, two friends of A.Z. and her late husband, A.Z's nephew and his wife, the two children, and A.Z. We discuss in greater detail the testimony and evidence presented by certain of these witnesses as pertinent to our analysis below.

¶6 After the witnesses testified, the guardian ad litem recommended that the circuit court grant the guardianship petitions.

¶7 At the conclusion of the hearing, the circuit court granted the petitions for guardianship. The court also ordered that the children participate in counseling, that visitation between A.Z. and the children take place "in a therapeutic setting," and that the children's therapists "shall determine when" visitation may be held. A.Z. appeals.

## DISCUSSION

¶8 WISCONSIN STAT. § 48.9795 governs the private guardianship of a minor's person.[5] The statute provides a two-part procedure for the adjudication of a guardianship petition: a fact-finding phase and a dispositional phase.[6] Sec. 48.9795(4)(f)-(g).

¶9 In the fact-finding phase, the petitioner must show by clear and convincing evidence "that the child's parents are unfit, unwilling, or unable to provide for the care, custody, and control of the child or other compelling facts

---

[5] The statute addresses four types of guardianship. *See* WIS. STAT. § 48.9795(2)(d). Because this appeal concerns a petition for full guardianship, *see* § 48.9795(2)(d)1., this opinion refers only to the statutory provisions that apply to a full guardianship.

[6] WISCONSIN STAT. § 48.9795(4)(f) refers to "fact-finding hearing" and "dispositional hearing," but these hearings need not be separately held. Sec. 48.9795(4)(e)1., (f).

and circumstances demonstrat[e] that a full guardianship is necessary." WIS. STAT. § 48.9795(4)(f) (providing that petitioner must prove "the allegations in the petition under par. (b) by clear and convincing evidence") and (4)(b)4. (providing that a petition for guardianship state "the facts and circumstances establishing that the child's parents are unfit, unwilling, or unable to provide for the care, custody, and control of the child or other compelling facts and circumstances demonstrating that a full guardianship is necessary.").

¶10　The circuit court "shall immediately proceed to determine the appropriate disposition under par. (h), considering the factors under par. (g)." WIS. STAT. § 48.9795(4)(f). In the dispositional phase, the court shall consider the following factors: "Any nominations" for guardian made by the parents or child twelve years old or older, "and the opinions of the parents and child as to what is in the best interests of the child"; "[w]hether the proposed guardian would be fit, willing, and able to serve as the guardian of the child"; and "[w]hether appointment of the proposed guardian as the child's guardian is in the best interests of the child."[7] Sec. 48.9795(4)(g)1.-2. and 4. The statute specifies that the "best interests of the child as determined by the court shall control in making the [guardianship] determination when th[e] nominations and opinions [of the parents or child] are in conflict with those best interests." Sec. 48.9795(4)(g)1. At the conclusion of the hearing, the court shall grant one of the dispositions set forth in § 48.9795(h). Sec. 48.9795(4)(f) and (4)(h).

---

[7] The statute includes one additional dispositional factor, WIS. STAT. § 47.9795(4)(g)3., which applies only when the child is "an Indian child" and is not relevant here.

¶11 Here, the circuit court granted the disposition described in WIS. STAT. § 48.9795(4)(h)2., which in pertinent part provides as follows:

> 2. A disposition ordering the guardianship and issuing letters of guardianship if the court finds that the petitioner has proved the allegations in the petition by clear and convincing evidence and determines that such an appointment is in the best interests of the child …. The disposition shall include all of the following:
>
> a. Whether the appointment is for a full … guardianship ….
>
> ….
>
> c. If applicable … reasonable rules of parental visitation.

Sec. 48.9795(4)(h).

¶12 The ultimate decision on whether to appoint a guardian is within the discretion of the circuit court. *Robin K. v. Lamanda M.*, 2006 WI 68, ¶12, 291 Wis. 2d 333, 718 N.W.2d 38. We will not disturb the court's factual findings unless they are clearly erroneous. *Id.*; *Cynthia H. v. Joshua O.*, 2009 WI App 176, ¶33, 322 Wis. 2d 615, 777 N.W.2d 664. A finding is clearly erroneous if it is against the great weight and clear preponderance of the evidence. *State v. Arias*, 2008 WI 84, ¶12, 311 Wis. 2d 358, 752 N.W.2d 748. "Under the clearly erroneous standard, 'even though the evidence would permit a contrary finding, findings of fact will be affirmed on appeal as long as the evidence would permit a reasonable person to make the same finding.'" *Royster-Clark, Inc. v. Olsen's Mill, Inc.*, 2006 WI 46, ¶12, 290 Wis. 2d 264, 714 N.W.2d 530 (quoted source omitted). Moreover, appellate courts search the record for evidence supporting the circuit court's decision. *Goberville v. Goberville*, 2005 WI App 58, ¶7, 280 Wis. 2d 405, 694 N.W.2d 503; *Mentzel v. City of Oshkosh*, 146 Wis. 2d 804, 808, 432 N.W.2d 609 (Ct. App. 1988). We affirm a circuit court's discretionary

decision "'if the circuit court applies the proper legal standard to the relevant facts and uses a rational process to reach a reasonable result.'" ***Robin K.***, 291 Wis. 2d 333, ¶12 (quoted source omitted).

¶13    A.Z. argues that the circuit court committed four errors in appointing A.Z.'s nephew and wife as guardians of her children. We address each asserted error in turn.[8]

## I.  Fact-Finding Phase: "Outdated" Evidence

¶14    As stated, in the fact-finding phase of a private guardianship proceeding, a petitioner must prove by clear and convincing evidence that the parents of the child are "unfit, unwilling, or unable to provide for the care, custody, and control of the child or other compelling facts and circumstances demonstrate[e] that a full guardianship is necessary." WIS. STAT. § 48.9795(4)(f) and (b)4.

¶15    During the guardianship hearing, the circuit court heard testimony from several witnesses with personal knowledge of A.Z., both before and after the children began living with A.Z.'s nephew and his wife in April 2021.

¶16    A.Z.'s family doctor testified that A.Z. was hospitalized in late 2019 for several physical ailments, continued to experience pain related to some of these ailments, and had other health issues after 2019, including multiple

---

[8]  A.Z.'s nephew and his wife argue that A.Z. has "waived" her arguments that the circuit court erred in determining that they are fit, willing, and able to act as guardians and in ordering visitation without setting reasonable rules. We assume without deciding that A.Z. has not waived these arguments.

hospitalizations within months of the guardianship hearing. He testified that A.Z. had not had any psychological evaluation.

¶17 A personal assistant working for A.Z. from November 2019 to January 2021, who had also known A.Z. as a friend for 13 years, testified as follows. When she worked for A.Z., A.Z.'s husband did most of the parenting of the two children and A.Z. was mostly bedridden and engaged in no activities with the children. A.Z.'s nephew and his wife helped with household chores, engaged in activities with the children, and stayed overnight when A.Z. was hospitalized. A.Z. had little interaction with her son. A.Z. had her daughter get food, alcohol, and medication for her and help with her personal care. The personal assistant further testified in detail about A.Z.'s frequent alcohol consumption and intoxication, and the unkempt condition of the home.

¶18 The children both testified about their concerns for their mother's physical and mental health, and that they do not feel safe with their mother or want to live with her. Both children and A.Z.'s nephew and his wife testified about A.Z.'s frequent alcohol consumption. Both children testified that they believe A.Z. is unable to parent because of her mental health and alcohol issues, and they want her to address those issues and work to get better before they feel safe seeing her again.

¶19 A.Z.'s children and her nephew and the nephew's wife also testified about A.Z.'s behavior toward her children after they began living with her nephew and his wife, as follows. On a few occasions, A.Z. visited her nephew's home uninvited, in an attempt to see her children, which was upsetting to both children. Police were called to one such incident. There was also an incident at a funeral attended by A.Z. and the children when A.Z. attempted to speak with the children.

A.Z.'s children testified that this interaction made them uncomfortable and angry. The children testified about other occasions since they moved in with A.Z.'s nephew and his wife when their mother's conduct made them feel angry and unsafe.

¶20     In its oral ruling, the circuit court discussed its concerns with A.Z.'s conduct toward her children, both before and after March 2021, as well as its concerns with A.Z.'s own well-being. The circuit court referenced her behavior from the time when A.Z. was recovering from health issues before her husband's death, and her behavior, need for counseling, and alcohol consumption after his death in the months leading up to the hearing. The court said that the testimony of the children and A.Z.'s employee show that A.Z. was unable to parent before and at the time of her husband's death. The court said that, while A.Z. "probably is doing better now," the relationships A.Z. established with her children at that time prevent her from being able to parent now. The court explained that this is especially true given the lack of any evidence that A.Z. is addressing her mental health and alcohol issues and her outright denial that she has such issues or needs counseling. The court further addressed how A.Z.'s current perception of events regarding her children has negatively shaped her relationships with them, and discussed what needs to be done to begin to repair their relationships.

¶21     As to A.Z.'s need for counseling as it pertains to her ability to parent, the circuit court found, "Mom doesn't think she needs to go to counseling. Her two children thinks she needs some counseling.… That's an irreconcilable issue at this time.… Mom needs to get counseling, both for her AODA issues and potentially other issues.… [T]here is currently not a parent/child relationship that can be salvaged without counseling." The court noted that counseling is a place where A.Z. can begin to understand her children because at the present time,

10

"[A.Z.] really needs to show some proof that she recognizes the trauma they experienced because of what she was going through with the abuse of alcohol …. [A.Z. has] got some things she needs to address. She needs to address it first in counseling" before she can be able to care for her children.

¶22 A.Z. argues that the circuit court improperly relied on "outdated" evidence from when A.Z. was recovering from several health ailments before and when her husband died, in determining that A.Z. is "unfit, unwilling, or unable" to provide for the care, custody, or control of her children under WIS. STAT. § 48.9795.[9]

¶23 As summarized above, the record refutes this argument. In its oral ruling, the circuit court noted specific, contemporaneous observations and factors that contributed to its ultimate determination that the petitioners had met the

---

[9] A.Z. inconsistently refers to the basis of the circuit court's determination. There are three bases on which a circuit may determine that guardianship is appropriate, each of which alone suffices to support that determination: when the petitioner proves that a parent is "unfit, unwilling or unable" to parent. WIS. STAT. § 48.9795(4)(b) and (f) (in addition to a fourth basis, "other compelling facts and circumstances"). Here, the circuit court determined that A.Z. is willing but unable to parent and did not address fitness.

A.Z. also argues that "[t]he issue of what time period is relevant to the determination of a parent's fitness involves a matter of statutory interpretation, which is a matter of law that is … subject to *de novo* review." However, the case on which A.Z. relies for this proposition, *State v. Gregory L.S.*, 2002 WI App 101, ¶¶29-30, 253 Wis. 2d 563, 643 N.W.2d 890, is inapposite. *Gregory L.S.* concerned a child in need of protection or services (CHIPS) petition brought by the State under WIS. STAT. § 48.13, and this court interpreted the statutes to conclude that the circuit court's determination relating to whether the child is in need of protection or services shall be made based on evidence as of the date that the petition is filed, not after. *See Gregory L.S.*, 2002 WI App 101, ¶¶39-40. A.Z. does not explain how the circuit court's consideration here of evidence before, at the time of, and after the guardianship petitions were filed runs afoul of any language in the statutes at issue here. As explained below, the circuit court's explanation that evidence of events in the recent past (before and after the filing of the guardianship petitions) is relevant to A.Z.'s current ability to parent is supported by the record, based on fact-finding that A.Z. fails to show is clearly erroneous.

11

burden of showing by clear and convincing evidence that A.Z. is unable to care for her children. For example, the court addressed A.Z.'s present situation when it found that "[The children] feel she has an alcohol problem. They feel that she cannot take care of herself. That has been substantiated by multiple witnesses in this hearing, and the evidence is clear and convincing that there is currently not a parent/child relationship that can be salvaged without counseling." The court determined that the record shows that "[A.Z.] is willing but not able to parent at this time" and that "[A.Z] needs to get counseling, both for her AODA issues and potentially other issues." The circuit court reiterated that it is "not convinced that on today or any other day [A.Z.] is sober" and able to parent her children without such counseling. The court's determination is supported by evidence that is contemporaneous to the hearing as summarized above.

¶24 The circuit court explained why it found relevant the testimony about events and circumstances from before and at the time of A.Z.'s husband's death less than one year before the hearing. It found that testimony relevant because it showed how A.Z.'s inability at that time to parent her children so damaged her relationships with her children that, without evidence that A.Z. is addressing the mental health and alcohol issues that underlay her inability then, the court could not find that she is able to parent them now. The court also explained that the testimony about events and circumstances from that time provided necessary context for the testimony about more recent events and circumstances.

¶25 A.Z. argues that one problem with the "outdated" evidence cited by the circuit court is that the evidence describes a "temporary period of time when [A.Z] was recovering from several acute and debilitating illnesses." In support of this argument, A.Z. cites two cases in which the court determined that limited

12

periods when a parent was unable to care for the parent's children may not, alone, render that parent unable to parent at the time of the hearing. *See Cynthia H.*, 322 Wis. 2d 615, ¶43; *Mrs. R. v. Mr. and Mrs. B.*, 102 Wis. 2d 118, 137, 306 N.W.2d 46 (1981). However, here, the circuit court did not find that the conditions that rendered A.Z. unable to parent are limited to the past. Rather, as discussed above, the court found that those conditions persist. Moreover, the court did not rely only on testimony about what happened before and when A.Z.'s husband died. Rather the court used that evidence to inform its assessment of the testimony about what had happened in the year since.

¶26     A.Z. also argues that the circuit court improperly relied on "outdated" evidence because the statute is written in the present tense and includes language about the urgency of guardianship hearings. However, nothing about the present tense of the statute restricts a court from drawing inferences about a parent's current ability to care for the parent's children from circumstances occurring prior to the guardianship hearing. Were we to accept A.Z.'s argument, that evidence from approximately one year before a guardianship hearing is impermissibly outdated, a circuit court would be foreclosed from considering potentially relevant evidence. A.Z. cites no legal authority supporting such a result.

¶27     To the extent that A.Z. is arguing that the circuit court erred in admitting evidence from before and when her husband died, A.Z. did not object to its admission in the circuit court. Accordingly, A.Z. has forfeited her right to raise the argument on appeal and fails to provide a persuasive reason that we should entertain the argument despite her failure to preserve it in the circuit court. *See State v. Kaczmarski*, 2009 WI App 117, ¶¶7-9, 320 Wis. 2d 811, 772 N.W.2d 702

13

(declining to address issues raised for the first time on appeal because we saw "no compelling reason to ignore forfeiture here").

¶28 The crux of A.Z.'s argument appears to be that the circuit court disregarded evidence "that [A.Z.] is doing better and functioning at a much higher level than she had been" before and at the time of her husband's death. However, it is evident from the court's oral ruling that the court discredited such evidence in favor of evidence showing that A.Z.'s health and alcohol consumption issues persist to an extent that she is not yet able to care for her children. Such weighing of the evidence is for the circuit court, not this court. *See Global Steel Prods. Corp. v. Ecklund Carriers, Inc.*, 2002 WI App 91, ¶10, 253 Wis. 2d 588, 644 N.W.2d 269 ("It is for the [circuit] court, not the appellate court, to resolve conflicts in the testimony…. The [circuit] court is the arbiter of the credibility of witnesses, and its findings will not be overturned on appeal unless they are inherently or patently incredible or in conflict with the uniform course of nature or with fully established or conceded facts.").

¶29 In sum, A.Z. fails to show that the circuit court improperly considered evidence of conduct and circumstances before and at the time of her husband's death less than one year before the guardianship hearing in determining that A.Z. is unable to parent her children.

## II. Dispositional Phase:  Whether Guardians Are Fit, Willing, and Able

¶30 A.Z. argues that the circuit court did not make "a specific determination that [her nephew and his wife] are fit, able and willing to act as guardians for the minor children [or] any factual findings that would support such a legal conclusion." We first clarify that whether the proposed guardians are fit, able, and willing to act as guardians is not a legal conclusion but a factor for the

circuit court to consider in the exercise of its discretion. Under WIS. STAT. § 48.9795(4)(g)2., one of the factors that a circuit court "shall" consider in the dispositional phase is "[w]hether the proposed guardian would be fit, willing, and able to serve as the guardian of the child." A.Z. points to no legal authority supporting her assertion that this factor is a legal conclusion, and we do not consider it further. *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("Arguments unsupported by legal authority will not be considered, and we will not abandon our neutrality to develop arguments.")(internal citation omitted).

¶31 We next present additional pertinent background and then explain our conclusion that the record shows that the circuit court did consider this factor in the proper exercise of its discretion.

¶32 In their petitions, A.Z.'s nephew and his wife were required, under WIS. STAT. § 48.9795(4)(b)8., to allege facts and circumstances that establish that they are fit, willing, and able to serve as the children's guardians. They alleged that the nephew is the children's cousin and the nephew's wife is related to the children by marriage, and that the nephew has known the children for many years, and they provided details about their relationships with the children. They described their employment status, experience caring for siblings, and specific experience caring for A.Z.'s children in assisting A.Z. over the years. They also discussed their desire and ability to care for the children and provide support to them.

¶33 A.Z.'s nephew and his wife were also required, under WIS. STAT. § 48.9795(4)(d), to submit to the circuit court sworn statements that provide information "as to the number of persons for whom the proposed guardian is responsible … the proposed guardian's income, assets, debts, and living expenses,

and as to whether the proposed guardian is currently charged with or has been convicted of a crime or has been determined … to have abused or neglected a child." They submitted the requisite statements swearing that they are able to provide financially for the children; they are not parents, guardians or custodians of any other individuals; they have never had any criminal convictions or abused or neglected any child; they would file annual guardianship reports; and they will perform all duties as guardians as required by the law and the court.

¶34 During the hearing, A.Z.'s nephew and his wife offered testimony that substantiated the allegations in their petitions and the information in their statements. Specifically, they testified about their relationships with the children, their employment status and experience with caring for siblings growing up in households with twelve and eight children, respectively, and their ability and desire to provide a home for the children along with emotional support.

¶35 A.Z.'s nephew and his wife further testified that they helped the children with their homework and spent time engaging in activities with them both before and after they started living with them, such as playing video games, watching movies, doing puzzles, running errands, eating dinner, and talking. A.Z.'s personal assistant from 2019 to early 2021 also testified that she observed the nephew and his wife engage in similar activities with the children. The nephew and his wife testified that, as of the day of hearing, the children had been living with them for several months and, during that time, they ensured that the children attended all necessary appointments. They testified that, since living with them, the children have done well in school and engaged in extracurricular activities. The children testified that they feel safe and supported in the nephew and his wife's home, and that their physical needs have been met there.

16

¶36    Following the testimony of all witnesses at the hearing, the circuit court provided its oral ruling.  The court specifically dismissed one of A.Z.'s arguments that her nephew and his wife lack training as parents by noting that many people do not have any training when they "start parenting."  The court granted the guardianship.

¶37    In its written order, the circuit court found that A.Z.'s nephew and his wife had proved the allegations in their petitions by clear and convincing evidence.  As summarized above, those allegations included facts relevant to their being fit, willing, and able to act as the children's guardians.  In addition, they also provided testimony relevant to that factor.  Specifically, they testified as to their experience caring for siblings in the past and their experience caring for A.Z.'s children for periods of time including the nearly ten months between April 2021 and the guardianship hearing.  They also testified about their desire to keep caring for the children and their ability to support them.  Their testimony and the children's testimony showed that, while in their care, the children were supported and doing well in school, and they engaged in activities together.  The children also testified that they wanted the nephew and his wife to remain as guardians.  The court's dismissal of A.Z.'s concern with the nephew and his wife's lack of training indicates that the court did consider whether they are fit, willing, and able to act as the children's guardians.  The court's implicit determination that they are fit, willing, and able, along with its explicit finding that they proved their allegations relevant to this factor, are amply supported by the record.

¶38    A.Z. argues that this court may not review the record to conclude that the circuit court considered this factor in this proceeding concerning the guardianship of a child.  A.Z. bases this argument on *Haugen v. Haugen*, 82 Wis. 2d 411, 415, 262 N.W.2d 769 (1978) (remanding to the circuit court to make

17

factual findings in a post-divorce judgment proceeding involving a parent's motion to change custody). However, *Haugen* is inapposite. In that case, there had been no prior hearing on custody because the issue had been resolved by stipulation, there was no record of the circuit court's post-motion meetings with either the guardian ad litem or with the children, and the circuit court made no factual findings. *Id.* at 413-15, 419. Here, there is a record of the hearing on the guardianship petitions, and the circuit court's consideration of the factor concerning whether the guardian is fit, willing, and able to care for the children is supported by its implicit reference to evidence relevant to that factor and to its explicit reference to the petitioners' proving allegations relevant to that factor. The record and the court's factual findings suffice to demonstrate that the court properly considered this factor in the exercise of its discretion.

¶39    A.Z. also argues that the circuit court erred in not "addressing any factual disputes that would bear on a determination of whether" her nephew and his wife are fit, willing, and able to serve as guardians. However, A.Z. does not explain this conclusory reference to "factual disputes." It can be reasonably inferred from the court's oral ruling and written order that the court resolved any factual disputes bearing on this factor in the proposed guardians' favor. A.Z. does not show that it was clearly erroneous for the court to do so.

### III.  Dispositional Phase:  Best Interests of the Children

¶40    Under WIS. STAT. § 48.9795(4)(g)4., one of the factors that a circuit court must consider in the dispositional phase is "[w]hether appointment of the proposed guardian as the child's guardian is in the best interests of the child." Additionally, the court shall consider any nominations for guardian made by the parents or child and the opinions of the parents and child as to what is in the best

18

interests of the child, "but the best interests of the child as determined by the court shall control in making the [guardianship] determination when those nominations and opinions are in conflict with those best interests." Sec. 48.9795(4)(g)1. Finally, the court shall order the guardianship "if the court finds that the petitioner has proved the allegations in the petition by clear and convincing evidence and determines that such an appointment is in the best interests of the child." Sec. 48.9795(4)(h)2.

¶41 As stated, the ultimate decision on whether to appoint a guardian is within the discretion of the circuit court. *Robin K.*, 291 Wis. 2d 333, ¶12. Appellate courts search the record for evidence supporting the circuit court's discretionary decision. *Goberville*, 280 Wis. 2d 405, ¶7; *see also Randall v. Randall*, 2000 WI App 98, ¶7, 235 Wis. 2d 1, 612 N.W.2d 737 ("Although the proper exercise of discretion contemplates that the circuit court explain its reasoning, when the court does not do so, [the appellate court] may search the record to determine if it supports the court's discretionary decision.").

¶42 Here, the children nominated A.Z.'s nephew and his wife as their guardians, it can be reasonably inferred from the children's testimony that it is their opinion that appointment of A.Z.'s nephew and his wife as their guardians is in their best interests, and the guardian ad litem who was appointed to represent the children's best interests also recommended that the guardianship be granted. We conclude that the record shows that, in the proper exercise of its discretion, the circuit court agreed with the children and the guardian ad litem and determined that granting the petitions for guardianship is in the children's best interests.

¶43 The record as summarized above establishes that the circuit court considered the factors of counseling, A.Z.'s ability to parent, A.Z.'s relationship

with and treatment of both children in the most recent time period she had custody of them, the children's perception of their mother needing help and their not feeling safe in her presence, her dismissal of their trauma, and the potential for the children to have beneficial contact with A.Z. in the future. The circuit court found that the children "were not being properly cared for" when they lived with A.Z. and that, due to A.Z.'s health and alcohol consumption issues, which A.Z. denies but which are "substantiated by multiple witnesses in this hearing," she remains unable to properly care for the children. The court further found that A.Z. needs to engage in counseling in order to address the mental health and alcohol consumption issues that render her unable to care for the children at present. It can be reasonably inferred from these findings, and the record that supports them, that the court determined that it is not in the children's best interests for them to return to her care at this time.

¶44     The record as summarized above also establishes that the children's safety and security are being provided for by A.Z.'s nephew and his wife, and that the children are doing well in their care. It can be reasonably inferred from the court's implicit and explicit findings as to A.Z.'s nephew and his wife, noted above along with the record that supports those findings, that the court determined that it is in the children's best interests to appoint the nephew and his wife as their guardians. The court explicitly so found in its written order.

¶45     A.Z. argues that the circuit court failed to resolve eight factual disputes that bear on the best interests of the children. However, the court specifically addressed five of the purported factual disputes: (1) as to A.Z.'s nephew and his wife's limited life and parenting experience, the court found that parental training is not necessary for a guardian to be fit, willing, and able; (2) as to A.Z.'s nephew and his wife's "unauthorized taking" of A.Z.'s children, the

20

court said that "this information has already come to the attention of the Court" and found that "they didn't steal the children"; (3) as to A.Z.'s nephew and his wife's alleged interference with A.Z.'s attempts to connect with her children and their unwillingness to facilitate her continuing relationship with her children, the court explained why contact with A.Z. would be detrimental to the children and that such contact could resume once all parties received counseling, and ordered that A.Z.'s nephew and his wife provide A.Z. with bi-weekly email updates about the children's progress;[10] (4) as to A.Z.'s nephew and his wife's failure to enroll her son with the counselor A.Z. had found, the court addressed their reasoning for not forcing him to have counseling, said that it had no reason to criticize them for that, explained why he nevertheless needed to begin counseling, and ordered that he begin counseling with someone he can trust; and (5) as to A.Z.'s nephew and his wife's failure to continue the children's religious upbringing, the court explained that counseling is more important "to make sure that these children stay emotionally healthy" and that it is leaving a decision as to religious training "up to the guardians at this point in time."

¶46    The remaining three factual disputes concern A.Z.'s nephew and his wife's financial motives in assuming the guardianship, their allegedly taking

_____

[10] The circuit court implicitly also relied on the following testimony pertinent to this issue. When asked whether he and his wife offer to take the children to see their mother or call her, A.Z.'s nephew testified, "Yes. Multiple times. I've encouraged them. I mean, and anytime I'd say if you want to contact her, if you want to see her, you know, we can easily arrange that." When asked if they made the children available for holidays, he testified, "Yes. I asked them if they wanted to see or talk with [A.Z.] for Thanksgiving or Christmas or New Year's, and they declined every attempt." His wife similarly testified that she "would love for [the children] to have a healthy, good relationship [with A.Z.]," but that when A.Z. had showed up at their home unannounced and wanted to see her daughter, she asked whether the daughter wanted to see her mother and, after the daughter indicated she did not want to, the nephew's wife respected those wishes.

monetary advantage of A.Z. when she was in a weakened state, and their financial dependence on the children's grandparents to care for the children. However, the circuit court need not explicitly resolve every factual dispute presented to it. It remains up to the discretion of the circuit court to weigh the factual disputes and decide their relevance to the best interests of the child determination. We conclude that the record establishes that the circuit court properly exercised its discretion in addressing the issues relevant to the best interests of the child determination and in determining that granting the guardianship petitions is in the best interests of the children.[11]

### IV. Dispositional Phase: Visitation Rules

¶47 Under WIS. STAT. § 48.9795(4)(h).2.c., in "[a] disposition ordering the guardianship," the circuit court may include "reasonable rules of parental visitation."

¶48 The only statutory limitations on a circuit court's visitation decision are in WIS. STAT. §§ 48.9795 (12) and (13), which address visitation by a child's grandparents and stepparents and prohibit visitation when one parent has killed the other parent, respectively. Otherwise, a circuit court's determination regarding whether or not to order visitation is discretionary. *Roger D.H. v. Virginia O.*, 2002 WI App 35, ¶9, 250 Wis. 2d 747, 641 N.W.2d 440 (modified on other grounds by *Michels v. Lyons*, 2019 WI 57, 387 Wis. 2d 1, 927 N.W.2d 486). As

---

[11] A.Z. argues that the circuit court's asserted failure to resolve these factual disputes requires that we remand for the court to make "proper findings" as to these issues. A.Z. cites *Minguey v. Brookens*, 100 Wis. 2d 681, 303 N.W.2d 583 (1981) in support of this proposition. We do not address this argument given our conclusion that the court did resolve five of the asserted factual disputes and implicitly determined that the remaining three asserted factual disputes are not relevant to its best interests of the child determination.

22

stated, we affirm a circuit court's discretionary determination as long as it examines the relevant facts, applies the proper legal standard, and uses a demonstrated rational process to reach a conclusion that a reasonable judge could reach. *Roger D.H.*, 250 Wis. 2d 747, ¶9. "[W]hether or not the [circuit] court applied the correct legal standard in exercising its discretion is reviewed de novo." *Cynthia H.*, 322 Wis. 2d 615, ¶33.

¶49    The circuit court addressed visitation between A.Z. and her children in its oral ruling. The court said that "I do, however, believe that this situation of having no contact going forward is inappropriate…. I think that something needs to be done so that [the children] do not reach the age of majority without seeing their mom." The court clarified that visitation should "be done in a therapeutic setting where … the counselors for both [children] could say they are ready to have family therapy with their mom involved. And at that time, the three of them could do therapeutic sessions and begin to talk about how to move forward."

¶50    The circuit court elaborated that it was ordering that A.Z. and her children engage in counseling, "and that once they're all involved in counseling, they can begin family therapy to reunite [A.Z.] with the kids. It would be my expectation that eventually the kids would be able to see mom in a setting where they feel comfortable. I think the children should dictate when that happens."

¶51    The circuit court was then asked clarifying questions by A.Z.'s attorney. When asked, "Did you order that contact would only happen by recommendation of the kids' counselors?" the court responded, "Yes." The attorney followed up by asking, "It sounds like what you're ordering is that it happen immediately in a therapeutic setting? The contact with mom?" The court explained that the contact would not be immediate, but after all three were

engaged in counseling, and "when the children's counselor says they're ready to do a family session with mom, there should be a family session with mom."

¶52    The circuit court's written dispositional order provided, under the section for "Reasonable rules of parental visitation," that "[c]ontact with Mother shall be in a therapeutic setting.  The respective counselors for the children shall determine when a family therapy session may be held with Mother."

¶53    A.Z. argues that the circuit court did not follow the proper legal standard, requiring that the court set "reasonable rules of parental visitation," when the court delegated its power to decide when and whether to have visitation to the children's counselors.  A.Z. argues that the statute authorizes only the court and the guardian to make visitation decisions.  *See* WIS. STAT. § 48.9795(4)(h)2.c. A.Z. argues that the court's order abdicates its discretionary authority to set reasonable rules of visitation.  Finally, A.Z. argues that the delegation of decision-making authority to the counselors is inconsistent with the court's determination that visitation should occur.

¶54    A.Z's nephew and his wife argue that the circuit court properly exercised its discretion to rely on the counselors "as professionals and experts to ensure that the minor children are" mentally and emotionally ready to reestablish their relationship with A.Z.  The guardian ad litem argues that, in leaving it to the counselors to determine when visitation might occur, the court properly relied on evidence showing that "it was impractical for visits to occur" based on the level of conflict between the children and A.Z.

¶55    We agree with A.Z.  The delegation of the visitation decision to the counselors is not a reasonable rule because it does not set any standard to guide the parties.  *See Rule*, MERRIAM-WEBSTER.COM, https://www.merriam-

webster.com/dictionary/rule (last visited Feb. 8, 2023) (defining "rule" as "a prescribed guide for conduct or action," and "a usually written order or direction made by a court regulating court practice or the action of the parties"). As A.Z. notes, it does not provide any guidance for the counselors or provide a means for the circuit court to review the counselors' assessments of the parties' readiness for visitation. Accordingly, we reverse and remand for the circuit court to set reasonable rules of visitation under WIS. STAT. § 48.9795(4)(h)2.c.

## CONCLUSION

¶56    For the reasons stated above, we affirm in part, reverse in part, and remand to the circuit court to set rules of visitation consistent with statutory standards.

*By the Court.*—Orders affirmed in part; reversed in part and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.