In re the Marriage of:

Linda M. Goberville, Petitioner-Respondent,

v.

Brad J. Goberville, Respondent-Appellant.

Court of Appeals

*No. 04–2440–FT. Submitted on briefs December 30, 2004.—Decided February 23, 2005.*

2005 WI App 58

(Also reported in 694 N.W.2d 503.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *David J. Rice*, of Eau Claire.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Kelly J. McKnight* of Eau Claire.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J.    Brad Goberville appeals that por-

tion of a divorce judgment ordering a physical placement schedule.[1] Brad argues the trial court erroneously exercised its discretion by making no reference to the statutory factors set out in WIS. STAT. § 767.24(5) in its findings and by relying entirely on the guardian ad litem's recommendation. Because the record is insufficient to determine on what evidence the trial court relied and what process of reasoning it applied to the facts, we reverse the judgment in part and remand for further proceedings.

¶ 2. Linda and Brad Goberville were married in 1990 and have one child, Samuel, born in 1996. In August 2002, Linda petitioned for divorce. Because Linda and Brad did not initially agree on a placement schedule, a guardian ad litem was appointed to represent their son's best interest. On March 31, 2003, the guardian ad litem submitted a one and a half page preliminary report to the family court commissioner, recommending that Linda be granted sole legal custody and primary physical placement.[2] The guardian ad litem also proposed a temporary placement schedule under which Brad would have Samuel every other weekend and either one afternoon and an overnight or two afternoons a week during the school year.[3] The

---

[1] This is an expedited appeal under WIS. STAT. RULE 809.17. All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] The guardian ad litem explained that friction between Linda and Brad made him unwilling to recommend joint legal custody at that time. He added that he believed Linda had a better support system in the area and there would be less conflict if one party was the major decision maker.

[3] All proposed placement schedules tended to equalize placement during the summer. Linda's and Brad's disagreement thus focused on physical placement during the school year.

guardian ad litem based his recommendations on two meetings with each parent;[4] he also talked to Samuel's kindergarten teacher and Linda's sister, Julie, who looked after Samuel when he came home from school.

¶ 3. After a temporary placement hearing, the family court commissioner awarded joint legal custody to Linda and Brad and ordered them to attend mediation. Rather than adopt the guardian ad litem's proposed placement schedule, the court commissioner awarded Brad placement every day from immediately after school until 6:30 p.m. and every other weekend. Linda and Brad completed mediation on May 29, 2003, and agreed to a parenting schedule for both the summer and school year. Under that plan, Samuel would spend alternate weekends and every Wednesday evening with his father during the school year.[5]

¶ 4. On February 16, 2004, Brad proposed an alternative placement schedule that would roughly equalize Samuel's time with him. Linda requested that the parties continue to follow the schedule set out in the mediation agreement. On February 26, the action for divorce was tried.

¶ 5. Only two witnesses, Linda and Brad, testified at the trial. Brad requested that the court hear two other witnesses who could speak about his bond with Samuel. The court asked the attorneys and the guardian ad litem whether there was any dispute that Brad was a good father. When they agreed that was not a question, the court determined Brad's proposed wit-

---

[4] The guardian ad litem met with each parent in his office and then visited Linda and Brad once at their respective homes. Samuel was present during the "in-home" interviews.

[5] It is unclear from the record exactly when this placement schedule went into effect, although it could not have been before early June of 2003.

nesses were not "going to add anything," and they did not testify. Once the testimony concluded, the guardian ad litem told the court he had not filed a supplemental report, but rather had given his recommendations orally to Linda and Brad. He then proceeded to make a statement recommending the current schedule be maintained. The court agreed.

¶ 6.   A trial court has "wide discretion in making physical placement decisions." *See Wiederholt v. Fischer*, 169 Wis. 2d 524, 530, 485 N.W.2d 442 (Ct. App 1992). What is in the child's best interests is a mixed question of law and fact. *Id.* at 530–31. The trial court's determinations on psychological factors are findings of fact and will not be set aside unless they are clearly erroneous. *Id.* Whether the trial court properly exercised its discretion is, however, a matter of law. *See Seep v. State Personnel Comm'n*, 140 Wis. 2d 32, 38, 409 N.W.2d 142 (Ct. App. 1987).

¶ 7.   We will sustain discretionary acts as long as the trial court examined the relevant facts, applied a proper standard of law and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *State v. Gudenschwager*, 191 Wis. 2d 431, 440, 529 N.W.2d 225 (1995). For an exercise of discretion to be reasonable, the court need not exhaustively analyze each piece of evidence, but it must articulate its findings and reasoning. *See Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981). "Discretion" entails a process of reasoning that depends on facts in the record or reasonably derived by inference from the record. *Mullen v. Coolong*, 153 Wis. 2d 401, 406, 451 N.W.2d 412 (1990). The court of appeals may thus look to the record, if necessary, for reasons to

support the court's exercise of discretion. *See Vier v. Vier*, 62 Wis. 2d 636, 639–40, 215 N.W.2d 432 (1974).

¶ 8.   Brad argues the trial court erroneously exercised its discretion when setting a physical placement schedule because it did not refer to any of the WIS. STAT. § 767.24(5) factors in its statement.[6] He also argues that the court erred by basing its decision entirely on

---

[6] The written judgment and order includes no findings of fact specific to placement and provides no explanation of the court's reasoning; thus, we consider only the trial court's oral statement of its decision. Under WIS. STAT. 767.24(5), the court "shall" consider the following factors to the extent they are relevant:

1. The wishes of the child's parent or parents, as shown by any stipulation between the parties, any proposed parenting plan or any legal custody or physical placement proposal submitted to the court at trial.

2. The wishes of the child, which may be communicated by the child or through the child's guardian ad litem or other appropriate professional.

3. The interaction and interrelationship of the child with his or her parent or parents, siblings, and any other person who may significantly affect the child's best interest.

4. The amount and quality of time that each parent has spent with the child in the past, any necessary changes to the parents' custodial roles and any reasonable life-style changes that a parent proposes to make to be able to spend time with the child in the future.

5. The child's adjustment to the home, school, religion and community.

6. The age of the child and the child's developmental and educational needs at different ages.

7. Whether the mental or physical health of a party, minor child or other person living in a proposed custodial household negatively affects the child's intellectual, physical, or emotional well-being.

the guardian ad litem's recommendation. Although Brad presents these claims as alternative arguments, they are really two aspects of the same claim, that the trial court did not articulate its findings and reasoning and the record is insufficient to demonstrate that its decision was the result of discretion.

¶ 9. Although Brad argues that the trial court refers to no statutory factors, Linda counters that the court's statement contains at least indirect references to Samuel's age, Wis. Stat. § 767.24(5)(am)6.; the effect a change would have on him, § 767.24(5)(am)3.; and the guardian ad litem's report, § 767.24(5)(am)15. Linda

---

8. The need for regularly occurring and meaningful periods of physical placement to provide predictability and stability for the child.

9. The availability of public or private child care services.

10. The cooperation and communication between the parties and whether either party unreasonably refuses to cooperate or communicate with the other party.

11. Whether each party can support the other party's relationship with the child, including encouraging and facilitating frequent and continuing contact with the child, or whether one party is likely to unreasonably interfere with the child's continuing relationship with the other party.

12. Whether there is evidence that a party engaged in abuse, as defined in s. 813.122(1)(a), of the child, as defined in s. 48.02(2).

13. Whether there is evidence of interspousal battery as described under s. 940.19 or 940.20(1m) or domestic abuse as defined in s. 813.12(1)(am).

14. Whether either party has or had a significant problem with alcohol or drug abuse.

15. The reports of appropriate professionals if admitted into evidence.

16. Such other factors as the court may in each individual case determine to be relevant.

further claims that the trial court's concern with minimizing change indicates it was considering "predictability and stability," pursuant to § 767.24(5)(am)8.

¶ 10.   Linda might be correct that the trial court's comments imply a recognition of some statutory factors; but without any explicit findings, we cannot be certain which factors the court considered relevant or why. Given the facts in this case, Samuel's wishes, his developmental needs, and the willingness of each parent to support the other's relationship with Samuel would seem to be relevant factors. Yet nothing in the court's statement indicates they were considered.[7] Nor was the testimonial evidence offered at trial sufficient to support a reasoned consideration of many of the relevant factors. Linda was not asked any questions about her son, his adjustment, or his needs, except whether he was "in good health." The only testimony about those issues came from Brad, who claimed the current placement schedule was too hectic for his son, that Samuel was not himself, and that he seemed run down.

---

[7] Because there was no evidence that anyone asked Samuel, who was seven at the time of the divorce, how he felt about the physical placement schedule, the court could not have considered that factor. The guardian ad litem's preliminary report and oral statement supported Brad's testimony that his son was shy and had been receiving speech therapy, two facts which might indicate special developmental needs. However, the court did not make any particular finding that would indicate this relevant factor was considered. There was evidence, in the form of a prior restraining order, that Linda and Brad had a tense relationship during the early months of their separation. But the trial court did not explicitly consider Brad's and Linda's willingness to support each other, and little evidence about whether they were supporting each other's parenting efforts at the time of the divorce appears in the record.

■

¶ 11. Given this absence of references to the statutory factors, Brad argues that the trial courts placement decision must have depended entirely on the guardian ad litems recommendation. It is within the trial courts discretion to adopt the recommendation of a guardian ad litem. However, the role of the guardian ad litem is not to direct the trial courts judgment, but to act as an advocate in the childs best interests. *See* WIS. STAT. 767.045(4). The question is whether the court adopted the guardian ad litems recommendation because of an exercise of discretion or effectively substituted the guardian ad litems judgment for its own. To answer that question, we must look to the statements of the trial court and the guardian ad litem.

■

¶ 12. The trial court began by expressing faith in the reports of guardians ad litem. "The lawyers know it takes an awful lot to persuade me that the guardian ad litem is wrong . The attorneys that do this in Eau Claire do it very seriously make every effort to be accurate in their reports to the court so I don't need more testimony." As this court has said, however, the guardian ad litem is an advocate for the child's best interest, not a fact-finder or a consultant for the court. *See. e.g., Hollister v. Hollister,* 173 Wis. 2d 413, 419, 496 N.W.2d 642 (Ct. App. 1992). A trial court may decide, in individual cases, to weigh the guardian's recommendation more heavily than the other statutory factors. But it cannot rewrite the statute to create a fixed hierarchy of factors. Such a hierarchy would, among other things, shift the burden of proof to the party wishing to change a temporary placement schedule.

¶ 13. The trial court's statement suggests the courts decision was largely based on its belief the

current placement schedule was working. The court stated it would not order a switch to equal time "just because Mr. Goberville would like that or that he thinks it is in his best interest." The court concluded: "just automatically going from a schedule that has been working to one of total fifty-fifty I don't think would be a good idea at this time."

¶ 14. A trial court might find a reasonable basis for such a belief and decision in a guardian ad litem's written report. In this case, however, the written report, which was filed in March, contains information only about interviews that had taken place the previous winter, before the temporary placement schedule had begun. It is thus difficult to see how it could serve as the basis for any conclusions about the success or failure of that schedule.

¶ 15. A trial court might also find a reasonable basis for supporting the guardian ad litem's recommendation in the guardian ad litem's oral statement at trial. Here, however, the guardian ad litem submitted no supplementary report explaining his recommendation. There is no evidence the guardian ad litem interviewed Linda or Samuel in the months after the temporary placement schedule had been put in place. The only evidence on this point is Brad's testimony that the guardian ad litem had not interviewed him since December of 2002. The guardian ad litem's statement suggests he may have discussed Samuel with his teacher—"[t]alking to Ms. Clark, his teacher, the schedule is—he's comfortable with it"—but provides no basis for any independent judgment of his conclusions. Most of the statement is couched in terms of general beliefs such as "I think young children need to know where they are going to stay" and "there needs to be a routine getting them off to school." To the extent the guardian

415

ad litem's statement refers, as it does in these instances, to facts that are not in evidence, the trial court cannot rely on it. *See. e.g., id.* at 420–21.

¶ 16.   The guardian ad litem did refer to several specific facts that emerged during his cross-examination of Brad. He noted that Brad missed a scheduled parent teacher conference and has communicated with Samuel's teacher only by notes. He also noted that Brad did not go to Linda's house to pick up Samuel. Beyond those two facts, it is impossible to know what information the guardian ad litem relied on to conclude the current schedule should be maintained. It is equally impossible to determine whether that recommendation was based on relevant statutory factors. The guardian ad litem's statement thus tells us nothing about the trial court's reasons for adopting the temporary schedule as the permanent one.

■

¶ 17.   Finally, even if there was some evidence the temporary placement schedule was successful, that fact cannot be used to shift the burden to the party wishing change. While temporary hearing records may be relevant at the trial of a divorce action where custody is at issue, neither party has the burden of proving a material change in circumstance to warrant a different custodial determination than the one ordered as a result of the temporary hearing. *Kuesel v. Kuesel,* 74 Wis. 2d 636, 638–39, 247 N.W.2d 72 (1976). That same principle applies to physical placement. Brad should not have to bear a heavier burden than Linda simply because he is the one who desires a different physical placement schedule. A reasonable exercise of discretion could not involve such burden shifting.

¶ 18. Based on our scrutiny of the record, we conclude that neither the trial court's own statements about the placement decision nor the evidence before the court are sufficient to establish that the decision reflected a reasonable exercise of discretion. That portion of the judgment relating to physical placement is therefore reversed and the cause remanded for further proceedings.

*By the Court.*—Judgment reversed in part and cause remanded with directions.