PER CURIAM.
¶1 Mary Paulson, pro se, appeals from an order that denied her second motion to remove her children from Wisconsin, transferred primary physical placement of the children to their father, Erik Paulson, and denied Mary's motion for reconsideration of a prior order finding her in contempt.[1] Mary also appeals from an order that denied her subsequent motion for reconsideration on these issues. Mary contends: (1) the circuit court failed to hold a timely hearing on her removal motion; (2) the court improperly limited her time and ability to present witnesses on the contempt matter; and (3) the court improperly modified the physical placement of the children without addressing all of the statutory factors. We reject each of Mary's contentions and affirm the court's orders.
BACKGROUND
¶2 In 2016, following Mary and Erik's divorce earlier that year, Mary filed a notice of intent to remove the parties' three youngest children[2] from Wisconsin, along with a motion seeking to modify physical placement to facilitate the proposed move out of state (the first removal motion). The primary reasons cited for the first removal motion were that Mary's new husband had lost his job, he and Mary could no longer afford to live in their rented house, and they were thinking of moving to Minnesota to be near Mary's parents. The circuit court's order denying Mary's first removal motion contained a provision that the children would attend school in the Hudson school district in Wisconsin, unless the parties mutually agreed otherwise.
¶3 On June 1, 2017, Mary filed a second notice of intent to remove the children from Wisconsin, stating that she intended to move to Minnesota on or about August 1, 2017. After Erik filed an objection, Mary filed an additional motion on July 20, 2017, seeking modification of physical placement and custody that would allow her to move out of state with the children (the second removal motion). The primary reasons cited for the second removal motion were that Mary's husband had found a job in Minnesota, that he and Mary had lost their rental house in Hudson, that they could not afford new housing in Hudson, and that they had purchased a house in Minnesota. The parties attempted mediation but were unable to reach an agreement. Mary then submitted a proposed parenting plan in support of her second removal motion. The circuit court appointed a guardian ad litem on July 20, 2017, and the following day sent correspondence to counsel asking each attorney how much time would be needed for a hearing. The attorneys for both Mary and Erik told the court they believed an entire day would be needed. In addition, Erik asked for "a reasonable period of time" for discovery, and Mary proposed a hearing date of October 6, 2017. The court then set the matter for a one-day hearing on October 11, 2017.
¶4 While Mary's second removal motion was pending, she also filed two motions seeking a temporary order granting the same relief.[3] Mary alleged she could not comply with the existing directive from the first removal proceeding that the children attend school in the Hudson school district because she had lost her rental housing in Hudson. She asked for a hearing date of August 22 or as soon as possible, seeking to have a temporary order in place before school was scheduled to start in Minnesota.
¶5 Before the circuit court heard either of Mary's motions for temporary relief, Mary took the two youngest children to stay with her at her parents' home in Brainerd, Minnesota, and enrolled the children in the school district there. Erik, in turn, moved to have Mary held in contempt for moving to Minnesota with the two youngest children and failing to enroll them in the Hudson school district, both in violation of the existing order from Mary's first removal motion.
¶6 On August 31, 2017, the circuit court held a nonevidentiary hearing on Mary's motions for a temporary order and Erik's contempt motion, at which Mary's counsel appeared telephonically. Following the hearing, the court issued an order denying Mary's requests for a temporary order allowing her to move the children to Minnesota. The court transferred temporary educational decision-making authority for all three children to Erik; transferred to Erik primary physical placement of the eldest son (who had stayed in Wisconsin with his father to attend school in Hudson); directed Mary to have the younger two children residing in the Hudson area by September 7, 2017; and told Mary that it would also transfer primary placement of the two younger children to Erik if she did not return those children to the Hudson area by that date. The court deferred ruling on Erik's motion for contempt because there was an ongoing discovery dispute related to that issue.
¶7 On September 12, 2017, Erik filed an amended motion seeking to hold Mary in contempt. Erik alleged that Mary had failed to return the two youngest children to Hudson by September 7, 2017, as required by the temporary order, or to turn them over to Erik when he went to Minnesota to try to exercise his physical placement with them. In response, Mary filed an affidavit with attachments, alleging that the Hudson school district had informed her that it would not accept any children for enrollment without either proof of their current residence within the district, or a tuition agreement for their enrollment as nonresidents. The school district also subsequently informed Mary that the parties' sixteen-year-old son with special needs would not be eligible for open enrollment as a nonresident because all of the available open enrollment positions for his grade level had been filled by that time.
¶8 The circuit court held another nonevidentiary hearing on September 18, 2017, at which it found Mary in contempt. The court awarded Erik attorney fees and reserved the option of imposing further sanctions if Mary's noncompliance with the court's orders continued. Mary moved for reconsideration.
¶9 On October 11, 2017, the circuit court held an evidentiary hearing on Mary's pending motions to remove the children from the state, to modify placement, and to reconsider the contempt ruling, as well as Erik's motion for modified child support. At the beginning of the hearing, the court advised the parties, without any objections from counsel, that Mary would have from 9:00 a.m. to noon to present her witnesses, and Erik would have from 1:00 p.m. to 3:30 or 4:00 p.m. to present his witnesses. At the end of the hearing, the circuit court reaffirmed the contempt ruling, denied Mary's second removal motion, and transferred primary physical placement of the children to Erik. Mary now appeals.
DISCUSSION
¶10 As a threshold matter, Erik argues we should dismiss this appeal due to Mary's failure, in multiple respects, to comply with the rules of appellate procedure for briefs. While the inadequacies of Mary's brief do hamper our review, her arguments are sufficiently well developed for a pro se litigant that we choose to address the merits of the appeal.
I. Timeliness of Final Hearing on Motion to Remove Children from State
¶11 Mary first contends the circuit court erred by failing to hold the final hearing "as soon as possible" as provided in WIS. STAT. § 767.481(4) (2015-16).[4] It is not clear to us, but she seems to suggest that the court had some obligation to hold the hearing before August 1, 2017-the date by which her notice of intent to remove the children from the state indicated that she was planning to move. In the alternative, she seems to suggest the mere passage of four months from her notice of intent to move violates the statutory requirement.
¶12 Mary has provided neither legal nor factual support for her contentions. The language of the statute does not create any mandatory deadline for holding a final hearing within a designated period of time, either in terms of days from the filing of the notice of intent to remove or with reference to the date by which a party wishes to move. Nor does the record show that there was any earlier date on which it was reasonably practicable for the circuit court to hold a one-day hearing, given the prerequisite mediation effort, the court's calendar, and the parties' need for discovery. Moreover, Mary herself asked the court for a final hearing date in October, well beyond the date by which she had indicated her intent to move. In short, we reject Mary's assertion that the final hearing was untimely, and conclude the circuit court acted within its discretion in scheduling the hearing. See Hefty v. Strickhouser , 2008 WI 96, ¶31, 312 Wis. 2d 530, 752 N.W.2d 820 (a circuit court's management of its docket is discretionary and will be affirmed absent an erroneous exercise of discretion).
II. Limitations on Time and Presentation of Witnesses on Contempt
¶13 Mary next contends the circuit court denied her due process by failing to afford her "an opportunity to provide evidence regarding the motion of contempt." She challenges both the court's initial contempt finding made without taking evidence, and the court's limitation on her time to present witnesses at the final hearing, during which the court also heard her motion for reconsideration of the contempt finding. Again, Mary fails to provide adequate support for her contentions.
¶14 To begin with, Mary has identified no factual dispute as to the sequence of events-either by an offer of proof to the circuit court or in her brief to this court-that would require the circuit court to have held an evidentiary hearing on the contempt motion. In particular, Mary has not denied that she was aware of the court order requiring her to enroll the children in the Hudson school district, but she instead took the two youngest children with her to Minnesota and enrolled them in school there. To the contrary, her own affidavits and testimony confirm those facts.
¶15 Furthermore, even if the circuit court did err in failing to allow Mary to present evidence at the initial contempt hearing, such error was cured by allowing her to present evidence on reconsideration. Unless witnesses are no longer available, the standard remedy for a procedural error at a hearing is to afford the complaining party a new hearing. See State ex rel. Irby v. Israel , 95 Wis. 2d 697, 708, 291 N.W.2d 643 (Ct. App. 1980) (holding as such in context of a prison disciplinary hearing). Both Mary and her husband testified about her unsuccessful efforts to find housing in Hudson that would allow her to enroll the two youngest children in school there,[5] and Mary has not identified any other witnesses in the contempt matter who were unavailable at the reconsideration hearing.
¶16 Finally, Mary has not persuaded us, pursuant to the de novo review we apply to constitutional questions, that limiting her presentation during the all-day evidentiary hearing on October 11, 2017, to three hours deprived her of due process. See generally State v. Schaefer , 2008 WI 25, ¶17, 308 Wis. 2d 279, 746 N.W.2d 457 (noting standard of review for constitutional questions). Due process guarantees a person the right to be heard before being found in contempt. Noack v. Noack , 149 Wis. 2d 567, 571, 439 N.W.2d 600 (Ct. App. 1989). Here, Mary was provided the half day she asked for, and she was free to allocate her time accordingly. Mary has not identified any additional testimony or evidence that she would have presented on the contempt issue if she had more time, much less shown that she was prejudiced by its absence.
III. Modifications to Physical Placement
¶17 Finally, Mary contends the circuit court erred[6] by failing to make findings that would provide a basis to substantially alter the amount of time that the two youngest children would spend with each parent, that the presumption that continuing primary placement with the parent with whom the children resided for the greater period of time had been overcome, and that awarding Erik primary physical placement was in the children's best interest. However, the first two factors Mary cites were not applicable because Erik did not file a motion to modify placement pursuant to WIS. STAT. § 767.481(3)(a). Instead, Erik filed an objection to the removal of the children from the state pursuant to § 767.481(3)(c).
¶18 Under WIS. STAT. § 767.481(3)(c), which was in effect at the time the removal motion was filed and decided, a circuit court could prohibit the removal of a child from Wisconsin if the court found that the prohibition would be in the child's best interest, after taking into consideration: (1) whether the purpose of the proposed removal was reasonable; (2) the nature and extent of the child's relationship with the objecting parent and the disruption to the relationship that would be caused by the proposed removal; and (3) the availability of alternative arrangements to continue the child's relationship with the objecting parent. Sec. 767.481(3)(c) and (5).
¶19 Here, the circuit court made explicit findings that the removal of the children from the state was not reasonable and would be disruptive to their relationship with their father, and that prohibition of removal would be in the children's best interest. Once the court had denied Mary's motion to remove the children from the state, the court further determined that it had no choice but to transfer primary placement of the children to Erik, given Mary's unilateral decision to move out of state herself while the removal motion was pending and her testimony that she lacked the ability to move back to the area in the short term. We therefore reject Mary's claim that the circuit court failed to make the necessary factual findings to support its decision or was otherwise in error.
By the Court. -Orders affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5. (2017-18).

The order at issue in the instant case also modified the parties' child support obligations and aspects of their legal custody regarding educational decision making, but those rulings are not challenged on appeal. Therefore, we will not discuss facts related to those issues in this opinion.

The parties' oldest child was already an adult by the time of the divorce, and their second-oldest child turned eighteen during the pendency of the proceedings at issue on this appeal.

Mary also asked for a change of venue and to have the guardian ad litem removed based upon an alleged conflict of interest, but those issues are not before us on appeal.

We note that Wis. Stat. § 767.481 was substantially revised after the proceedings in this matter. All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Mary's position that she could not have enrolled the youngest two children in the Hudson school district because she and the children no longer resided there ignores the fact that the Hudson school district also had an open enrollment period for tuition-paying nonresidents. Mary has not explained why she could not have enrolled both children in this manner if she had registered them in a timely manner.

Although Mary characterizes the circuit court's placement decision as containing "errors of law," she cites no authority to support her view as to the standard of review. Typically, we review circuit court decisions relating to the modification of placement orders under the erroneous exercise of discretion standard. Goberville v. Goberville , 2005 WI App 58, ¶18, 280 Wis. 2d 405, 694 N.W.2d 503. We need not resolve this discrepancy, because we would deny Mary's claim under either standard of review.