**COURT OF APPEALS
DECISION
DATED AND FILED**

**May 11, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP365**

STATE OF WISCONSIN

Cir. Ct. No. 2020FA39

IN COURT OF APPEALS
DISTRICT IV

IN RE THE MARRIAGE OF:

LACEY DAWN MCGHEE,

　　PETITIONER-RESPONDENT,

　V.

IVAN J. MCGHEE, III,

　　RESPONDENT-APPELLANT.

APPEAL from a judgment of the circuit court for Sauk County: WENDY J.N. KLICKO, Judge. *Affirmed.*

Before Fitzpatrick, Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Ivan McGhee appeals from a judgment of divorce, challenging the circuit court's order awarding Lacey McGhee sole custody and primary physical placement of their three children.   Ivan[1] argues that the court erred in awarding sole legal custody to Lacey because there was insufficient evidence to overcome the presumption under WIS. STAT. § 767.41(2)(am) (2019-20)[2] that joint custody is in the best interest of the children.   He also argues that the court erred in failing to maximize his placement time with the children and in failing to provide specific findings to justify placement with him of less than twenty-five percent.   We reject each of these arguments and affirm.[3]

## BACKGROUND

¶2      Ivan and Lacey were married in Wisconsin in 2006 and have three children together.   After residing in Florida for several years, the family moved back to Wisconsin in 2012 and lived in Lacey's mother's home in Lodi, along with other extended family members.   In 2018, the family moved to Plain, Wisconsin.   In early 2019, Lacey stopped living in the parties' home.   The parties dispute what prompted her departure.   From the time Lacey stopped living at the

---

[1] Because the parties share the same last name, we refer to them by their first names.

[2] Unless otherwise noted, all references to the Wisconsin Statutes are to the 2019-20 version that existed at the time the circuit court issued its order on custody and placement.  We note that the legislature modified WIS. STAT. § 767.41(5)(am) in May 2021, and that the new version of the statute went into effect December 1, 2021, after the circuit court's July 12, 2021 custody and placement order.  *See* 2021 Wis. Act 37, §§ 2-4, 7-8.  Although the final judgment of divorce incorporating the July 12, 2021 order was not entered until February 18, 2022, the record does not reflect that Ivan brought this statutory change to the circuit court's attention or requested that the court revisit its order in light of this statutory change.  On appeal, Ivan applies the factors in § 767.41(5)(am) as they existed at the time of the July 12, 2021 order and we follow his lead.

[3] Lacey did not file a response brief in this matter.  We considered whether summary reversal was warranted as a result of the failure to file a brief and concluded at conference that it was not.

parties' home until the children began residing with Lacey approximately thirteen months later, Ivan was the primary caretaker of the children.

¶3    Lacey filed for divorce in early 2020. Shortly after doing so, Lacey sought a temporary restraining order against Ivan on behalf of the children. As is typical in such proceedings under WIS. STAT. § 813.122, a temporary restraining order was granted in March 2020 without an evidentiary hearing. The temporary restraining order allowed Ivan supervised placement with the children every other Saturday from 8:00 a.m. to 6:00 p.m. Upon the advice of counsel, Ivan agreed to the temporary restraining order remaining in effect while the family court matter was pending.

¶4    At some point after filing for divorce, Lacey moved to Stoughton, Wisconsin. The children resided with her and attended school in Stoughton through the remainder of the divorce proceedings.

¶5    The circuit court held a hearing on the contested custody and physical placement issues, at which Lacey, Ivan, and several other witnesses testified regarding the parties' interaction and relationship with the children and with each other. Each party introduced testimony that the other party had engaged in acts of interspousal abuse, and Lacey also introduced testimony that Ivan had engaged in abuse of the children. A court-appointed guardian ad litem (GAL) also participated in the hearing.

¶6    Lacey testified that the children are doing well in the Stoughton school system and have made friends. She also testified that she does not believe that she and Ivan are able to cooperate and communicate with one another with respect to the children. She testified that whenever she "message[s] him in regards to the kids, it always turns into something else. It turns into [Ivan] calling [her]

3

names." Lacey introduced into evidence text messages between her and Ivan, in which they discussed the divorce proceedings as related to the children. In these messages, Ivan called Lacey derogatory names, and made threats as to what would occur in the court proceedings. Lacey also testified that Ivan's messages would switch from saying he was "done with the kids" and "moving back to Florida" to saying that he would "fight for the kids." She testified, "So there is no communication that is possible … with him in regards to the kids." Ivan did not present any contrary evidence on these topics.

¶7 Following the hearing, the parties submitted written arguments. Lacey requested sole legal custody and primary placement of the children, with Ivan continuing to have the placement set forth in the restraining order, *i.e.*, supervised visitation every other Saturday. Ivan requested, at a minimum, joint legal custody or, in the alternative, sole legal custody to him. As to placement, Ivan's written and oral requests differed. In his written arguments, Ivan requested primary and unsupervised placement. However, at the evidentiary hearing, he requested "substantial" unsupervised placement "in the range of 36 to 50 percent," with placement for a majority of the summer, and approximately three out of four weekends during the school year. This latter position on placement is the position he takes on appeal.

¶8 The GAL also submitted a written report that discussed all of the factors relevant to custody and placement set forth in WIS. STAT. § 767.41(5)(am). The GAL recommended that Lacey receive sole legal custody. The GAL based this recommendation on the text messages between the parties, coupled with Lacey's testimony, which, according to the GAL, "establishes that Ivan cannot or will not effectively communicate with [Lacey] regarding the children." The GAL further stated that "[i]t's difficult to imagine that the parties' cooperation and

communication … could be any worse, considering the text messages," and that "[n]o testimony or evidence was offered to rebut that impression." As to placement, the GAL recommended that Lacey have primary placement and that Ivan have unsupervised placement every other weekend, from Friday evening through Sunday evening, and that they divide their major holidays equally, alternating years. The GAL recommended that Ivan have access to the children's school, medical, counseling and dental records, and the authority to discuss the children's educational needs with school staff and participate in their education.

¶9     The circuit court issued an oral ruling on June 24, 2021, and a written order on July 12, 2021, that followed the GAL's recommendations. In making its determination on custody and physical placement, the court took into consideration the factors set forth in WIS. STAT. § 767.41(5)(am).

¶10     The circuit court awarded sole legal custody to Lacey, concluding that joint legal custody would not be appropriate due to the "manner in which [Ivan] has communicated with Lacey." The court stated, in reference to Ivan's communication with Lacey, that "no one should be subjected to that type of language or behavior" and that "[i]t is not apparent … that [Lacey] returned that type of behavior." The court determined that "under the current circumstances, the children are receiving the most stability and predictability in regard to legal decisions and custodial decisions being made for them by [Lacey]."

¶11     The circuit court also awarded Lacey primary placement of the children. The court awarded Ivan unsupervised placement every other weekend throughout the year, including the summer months, and divided the major holidays as recommended by the GAL, with additional placement with Lacey every Mother's Day and placement with Ivan every Father's Day.

¶12 On February 18, 2022, the circuit court entered the final judgment of divorce, which incorporates the custody and placement order. Additional material facts are included below.

## DISCUSSION

### I. Standard of Review for Custody and Physical Placement Determinations

¶13 "Custody determinations are matters within the [circuit] court's discretion." *Koeller v. Koeller*, 195 Wis. 2d 660, 663-64, 536 N.W.2d 216 (Ct. App. 1995). Similarly, a circuit court "has 'wide discretion in making physical placement decisions.'" *Goberville v. Goberville*, 2005 WI App 58, ¶6, 280 Wis. 2d 405, 694 N.W.2d 503 (quoted source omitted). "We will sustain discretionary acts as long as the [circuit] court examined the relevant facts, applied a proper standard of law and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Id.*, ¶7.

### II. Legal Custody

¶14 Ivan argues that the circuit court erred in granting sole legal custody to Lacey because the evidence was insufficient to overcome the presumption that joint legal custody is in the best interest of the children. Specifically, he argues that the evidence is insufficient to support the court's conclusion that the parties could not cooperate with respect to the children. He also contends that the court improperly relied on a single factor to assess the best interest of the children. For the reasons set forth below, we reject these arguments.

A. Inability to Cooperate

¶15 Under Wisconsin law, there is a presumption that "joint legal custody is in the best interest of the child," subject to exceptions not applicable here.[4] WIS. STAT. § 767.41(2)(am). Pertinent in this case, the circuit court may grant a party joint or sole legal custody of a child "based on the best interest of the child and after considering the factors under [§ 767.41](5)(am)." Sec. 767.41(2)(a); *see also* § 767.41(5)(am) (stating that "in determining legal custody and periods of physical placement, the court shall consider all facts relevant to the best interest of the child," and listing factors to be considered in making that determination). When, as here, one of the parties requests sole legal custody and the other party opposes that request, the court may grant sole legal custody only if it finds that doing so is in the child's best interest, and if the court specifically finds any of the following: (1) "[o]ne party is not capable of performing parental duties and responsibilities or does not wish to have an active role in raising the child"; (2) "[o]ne or more conditions exist at that time that would substantially interfere with the exercise of joint legal custody"; or (3) "[t]he parties will not be able to cooperate in the future decision making required under an award of joint legal custody." Sec. 767.41(2)(b)2.

¶16 In concluding that sole legal custody should be awarded to Lacey, the circuit court relied on the third ground in WIS. STAT. § 767.41(2)(b)2., Ivan's inability to cooperate in future decision making. This factor is also included in the list of factors a court must consider in making legal custody and placement

_____

[4] These exceptions involve incidents of domestic abuse. *See* WIS. STAT. § 767.41(2)(am). As discussed later in this opinion, the circuit court did not find domestic abuse.

determinations under § 767.41(5)(am). *See* § 767.41(5)(am)10. (court must consider "the cooperation and communication between the parties and whether either party unreasonably refuses to cooperate or communicate with the other party"). As the court summarized, "The reason for sole custody here is not in regards to [Ivan's] treatment of the children but his inability to discuss matters with [Lacey]."

¶17 The circuit court's determination is supported by Lacey's testimony and the content of Ivan's messages to Lacey. Lacey testified that whenever she messaged Ivan in regard to the children, "it always turns into something else. It turns into [Ivan] calling [her] names." In the messages introduced into evidence, Ivan called Lacey a "selfish cold hearted bitch" and told her, "Fuck off cow I fucking hate you and I will never fucking forgive you" and that he was glad the relationship was over because he "won[']t have to deal with having sex with a smelly nasty girl anymore." He also made threats with respect to the court proceedings, saying that "this means war," that the courts would take the children from her, that she "will look stupid in court," and that she would "[e]nd up in jail." Moreover, Lacey testified that Ivan would switch from saying that he was "done with the kids" and "moving back to Florida" to saying he would "fight for the kids," further making "no communication … possible" with respect to the children.

¶18 Ivan argues that the evidence presented is insufficient proof that the two parents could not cooperate for the benefit of the children. Specifically, he argues that the text messages were not related to the children and are not sufficient to overcome the statutory presumption of joint custody. We disagree.

¶19    Contrary to Ivan's assertion and as demonstrated above, Ivan's texts are clearly related to the children. Moreover, Ivan has failed to present any viable argument that the circuit court erred in determining that this evidence demonstrates an inability to cooperate in future decision making regarding the children. As Ivan acknowledges, the parties' inability to cooperate is a proper basis for overcoming the presumption of joint custody and awarding sole custody under WIS. STAT. § 767.41(2)(b)2.

B.  The Children's Best Interest as to Custody

¶20    As noted, legal custody determinations must be made "based on the best interest of the child and after considering the factors under [WIS. STAT. § 767.41](5)(am)." Sec. 767.41(2)(a). Ivan argues that the circuit court "improperly used a single factor to gauge the best interest of the children, effectively changing the analysis into a question of which parent was the most recent caretaker of the children." The factor at issue is § 767.41(5)(am)8., which requires the court to consider "[t]he need for regularly occurring and meaningful periods of physical placement to provide predictability and stability for the child."[5] We construe Ivan's argument to consist of two subparts: first, an assertion that the court relied on a single factor; and, second, that the court misapplied that factor. For the reasons set forth below, these arguments fail.

---

[5] As a result of the modifications to WIS. STAT. § 767.41 discussed in *supra* note 2, this factor is no longer one of the factors delineated in § 767.41(5)(am), although it was a factor at the time the circuit court made its custody and placement determinations. As stated in note 2, the record does not reflect that Ivan brought these statutory changes to the court's attention, nor did he argue that the modified version of the statute should apply. Ivan likewise does not argue on appeal that the circuit court erred in applying this factor.

*1. Single Factor*

¶21    Under WIS. STAT. § 767.41(2)(a), a custody award must be based on the best interest of the child after consideration of the factors set forth in § 767.41(5)(am). Ivan acknowledges that the circuit court "went through the factors set forth in … § 767.41(5)(am)." Nevertheless, he asserts that the circuit court "improperly used a single factor" under § 767.41(5)(am) to determine the best interests of the children, namely, the eighth factor: "[t]he need for regularly occurring and meaningful periods of physical placement to provide predictability and stability for the child." *See* § 767.41(5)(am)8.

¶22    Given his acknowledgment that the circuit court considered the factors in WIS. STAT. § 767.41(5)(am), the basis for Ivan's assertion that the court relied solely on the eighth factor is unclear. Ivan's assertion appears to be based on the court's statement that this factor was "the fundamental factor for the court in this case." However, Ivan provides no authority for the proposition that when, as here, the record shows that the court considered the other statutory factors, a court is not permitted to place more weight on one factor than others. Indeed, in discussing placement issues, Ivan acknowledges that "the factors listed in … § 767.41(5)(am) have different weights for every situation."

¶23    To the extent that Ivan means to suggest that the circuit court did not actually consider other factors, this argument fails because, as set forth below, the record plainly shows that the court considered all of the relevant factors under WIS. STAT. § 767.41(5)(am) in reaching its determinations on custody and placement based on the children's best interest.

¶24    The circuit court began with the first factor, "[t]he wishes of the [children's] parent or parents," *see* WIS. STAT. § 767.41(5)(am)1. The court

discussed the following. Ivan requested joint custody or, if the court determined there should be sole custody, sole custody to him. As to placement, Ivan requested "unsupervised placement three of four weekends and holiday placement on an odd/even rotation."[6] Lacey requested "sole custody and primary placement of the children." She also asked that Ivan's placement "be supervised, every other Saturday from 8:00 a.m. to 6:00 p.m."

¶25 As to the wishes of the children, under WIS. STAT. § 767.41(5)(am)2., the circuit court conveyed the information obtained from the GAL as follows. The first time the GAL spoke with the children, the children requested to live with their mother and see their father every other Saturday from 8:00 a.m. to 6:00 p.m. During a second interview with the two younger children, they repeated that request. The placement identified by the children is the placement that had been provided as a result of the temporary restraining order.

¶26 The circuit court also considered "[t]he interaction and interrelationship of the [children] with [their] … parents, siblings, and any other person who may significantly affect the [children's] best interest." *See* WIS. STAT. § 767.41(5)(am)3. The court found:

> During the course of the marriage[,] the children and the parties experienced many different living arrangements and there was a lot that happened in the years leading up to the

---

[6] The circuit court did not specifically mention Ivan's request for more placement than Lacey during the summer. However, in discussing this factor during its oral decision, the court stated that it would not repeat the parties' positions, which the court stated were set forth at the evidentiary hearing and in the parties' briefs. At the evidentiary hearing, Ivan asked to "maximize" placement in the summer. In his reply brief, he requested placement for the "majority" of summer if primary placement was given to Lacey during the school year. As previously mentioned, the court awarded him placement every other weekend throughout the year.

11

divorce both between the parents, between the parents and the children, and those they were living with. The time period where the family lived together intact was chaotic and certainly there were toxic relationships with Ivan, Lacey, and extended family members.

¶27 Next, the circuit court considered "[t]he amount and quality of time that each parent has spent with the [children] in the past, any necessary changes to the parents' custodial roles and any reasonable life-style changes that a parent proposes to make to be able to spend time with the [children] in the future." *See* WIS. STAT. § 767.41(5)(am)4. The court found:

> Each parent has had times where they have been the primary caretaker for the children. Most recently, the children have been with Lacey. That is where they have been attending school for the past year and that has been the stability and predictability for them. There was a period of time however when Ivan had that role and Lacey was absent.

¶28 In considering "[t]he [children's] adjustment to the home, school, religion and community," *see* WIS. STAT. § 767.41(5)(am)5., the circuit court found: "The kids seem to do well when they are with either parent. Things don't go well when everyone is together under the same roof." The court further found that the children "seem to be doing well in school."

¶29 The circuit court also considered "[t]he age of the [children] and the [children's] developmental and educational needs at different ages." *See* WIS. STAT. § 767.41(5)(am)6. The court did not specifically mention the children's ages. However, the GAL's report, which the court stated it had reviewed and used as a guide, states that the children's ages are nine, ten, and eleven. The court found that "[t]here does not appear to be any particular special needs in regard to the children's development and educational needs other than the court looking for stability and predictability for the children."

¶30　The circuit court next addressed "[w]hether the mental or physical health of a party, minor child, or other person living in a proposed custodial household negatively affects the [children's] intellectual, physical or emotional well-being." *See* WIS. STAT. § 767.41(5)(am)7. The court found that there was no specific testimony in regard to "any diagnosed mental or physical health of parents or persons that would negatively affect the children's well-being."

¶31　The circuit court also discussed the eighth factor, "[t]he need for regularly occurring and meaningful periods of physical placement to provide predictability and stability for the [children]," *see* WIS. STAT. § 767.41(5)(am)8., which Ivan argues was the single factor on which the court relied. The court stated that "[t]his is the fundamental factor for the court in this case." Relevant to this factor, the court found that, during the course of the marriage, the children had "experienced many living arrangements." The court further found that "stability and predictability is what these children need. They lived in quite chaotic and toxic environments while the parents lived together." The court found that awarding sole legal custody to Lacey would "provide the most stability and predictability for [the] children" with respect to "having appropriate legal [and] custodial decisions being made for them."

¶32　In discussing "[t]he cooperation and communication between the parties," *see* WIS. STAT. § 767.41(5)(am)10., the circuit court stated that it agreed with the GAL that the manner in which Ivan communicated with Lacey showed that joint legal custody would not be appropriate under the circumstances. The court further found that "no one should be subjected to that type of language or behavior," that "[i]t is not apparent … that [Lacey] returned that type of behavior," and that Ivan demonstrated an "inability to discuss matters with [Lacey]."

¶33     The circuit court discussed at some length whether Ivan engaged in abuse of the children.  *See* WIS. STAT. § 767.41(5)(am)12.[7]  The court stated that, although it did not find that any witnesses had purposely fabricated information, some of the testimony regarding Ivan's alleged abuse of the children is "less reliable or potentially suspect when it is rote, meaning the exact same phrase is used by more than one witness and it is repeated," giving the court "some pause as to the validity of those statements."  This finding echoed the GAL's statement that "Lacey, her mother and sister all testified nearly verbatim, that Ivan would hit the children '…when they didn't move fast enough or didn't do something the way he wanted.'" (Alteration in original.)  But the court also stated, "That doesn't mean it couldn't have happened.  However, it is not very specific, and it does give the court some question to whether or not the court can find that it did in fact occur.  But the issue is out there."

¶34     The circuit court also found that there were no allegations of child abuse  during the time Ivan had the children alone for thirteen months, that "[s]uch issues surfaced only when the family lived together," and that "[t]here was not a criminal record of anyone engaging in abuse or neglect—just the restraining order."  As to the restraining order, the court agreed with the GAL that it was not "very instructive or informative."  The court based this conclusion on the fact that "no testimony was taken" in the injunction proceedings and that instead, "[t]here was the stipulation to a temporary restraining order, which is not the same … as stipulating that there were grounds to enter an injunction."  The court added, "Nevertheless, the issue does present itself."

---

[7] There were no allegations that Lacey abused the children.

14

¶35    The circuit court also discussed the pertinent aspects of WIS. STAT. § 767.41(5)(am)12m., specifically, whether "[a] person who resides, has resided, or will reside regularly or intermittently in a proposed custodial household" has a criminal record or has engaged in child abuse or neglect.    *See* § 767.41(5)(am)12m.b.  In addition to the injunction and other allegations of child abuse discussed above, the court found that "[t]here was some history for Ivan in regards to disorderly conduct" but that there was "no criminal complaint or judgment of conviction that was offered" at the hearing.

¶36    The circuit court additionally considered "[w]hether there is evidence of interspousal battery … or domestic abuse."    *See* WIS. STAT. § 767.41(5)(am)13.  The court found that there was testimony presented by Lacey that Ivan engaged in interspousal battery against her, which Ivan denies, and that "there was also testimony from a witness [who] observed Lacey hit Ivan over the head with an object," with "no rebuttal to that testimony."  The court found that Lacey had not proved that interspousal battery had occurred, so as to change the rebuttable presumption of joint legal custody.  *See* WIS. STAT. § 767.41(2)(d).

¶37    The circuit court addressed "[w]hether either party has or had a significant problem with alcohol or drug abuse," *see* WIS. STAT. § 767.41(5)(am)14., finding that "there was some testimony that Ivan smokes marijuana, but there was nothing more substantial than that."

¶38    The circuit court did not specifically discuss three of the statutory factors in its ruling:  "[t]he availability of public or private child care services"; "[w]hether each party can support the other party's relationship with the [children]"; and "[t]he reports of appropriate professionals if admitted into evidence."  *See* WIS. STAT. § 767.41(5)(am)9., 11., 15.  However, the court stated

at the beginning of its oral ruling that it was using the GAL's written report as a guide in addressing and considering the necessary factors in order to make its determination on custody and placement. In his report, the GAL went through all of the factors, including these three. The GAL noted that the parties had help from extended family to assist with the children, there was no testimony that either of the parents unreasonably interfered with the children's relationship with the other parent, and there were no reports from professionals offered or admitted into evidence. Thus, the court took into consideration all the factors under § 767.41(5)(am) to make its decision on legal custody.

¶39 In sum, the record does not support Ivan's argument that the circuit court relied only on a single factor, stability and predictability, in awarding sole legal custody to Lacey. Instead, following an evidentiary hearing at which the court heard the parents' testimony and the testimony of numerous other witnesses, the court considered all of the factors in WIS. STAT. § 767.41(5)(am). The court further determined that predictability and stability were paramount to the children's best interest. Ivan presents no authority or cogent argument that would allow this court to second-guess the court's determinations on this point. *See **State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments and arguments unsupported by authority).

### 2. *Misapplication of WIS. STAT. § 767.41(5)(am)8.*

¶40 Ivan argues that the circuit court "rephras[ed]" WIS. STAT. § 767.41(5)(am)8., and applied "its own stability and predictability standard." These assertions are unsupported. As it did with other factors pertinent to the children's best interest listed in § 767.41(5)(am), the court, in analyzing this factor, recited the statutory language verbatim and made findings with respect to

that factor: "(8) <u>The need for regularly occurring and meaningful periods of physical placement to provide predictability and stability for the child.</u> This is the fundamental factor for the court in this case." *See* § 767.41(5)(am)8. As noted above, the court explained its reasons for emphasizing this factor and made findings related to that factor. Thus, the basis for Ivan's assertion that the court misapplied the statutory language is unclear.

¶41 Ivan states, "The natural reading of this factor suggests that the primary focus is for the court to provide meaningful and regularly occurring periods of physical placement. Then, as a result, that schedule will provide predictability and stability for the child." Again, Ivan has not shown that the circuit court misapplied this factor. First, as stated, the record makes clear that the court understood and applied the correct standard. In addition to the court reciting the exact statutory language of this factor, the court also made clear it had reviewed the GAL's report, which, in recommending that the court reject Lacey's placement request and instead order placement every other weekend with Ivan, states: "Placement for a parent on every other Saturday from 8:00 a.m. until 6:00 p.m.[,] as requested by Lacey, may be regularly occurring but it is not meaningful placement. It is in the best interest of the children that they be able to engage in the activities with their father as they did in the past." Thus, the court was aware of the statutory requirement of "regularly occurring and meaningful" placement and was also aware of the GAL's view that placement every other weekend with Ivan (which the court ordered) was meaningful. The record therefore does not support Ivan's assertion that the court misapplied WIS. STAT. § 767.41(5)(am)8.

¶42 Second, this court has previously rejected the argument that Ivan appears to be advancing here. In ***Helling v. Lambert***, 2004 WI App 93, ¶10, 272 Wis. 2d 796, 681 N.W.2d 552, this court noted that the circuit court "focused on

17

the factor enumerated in WIS. STAT. § 767.[41(5)(am)8.], the 'need for regularly occurring and meaningful periods of physical placement to provide predictability and stability for the child.'" *Lambert*, 272 Wis. 2d 796, ¶10 (statutory provision altered to reflect numbering in effect at the time of the custody and placement order in this case). The appellant in *Lambert* argued that the circuit court "erred in interpreting this provision as a general requirement for predictability and stability in the child's life, rather than a preference for regularly occurring periods of physical placement." *Id.* We rejected this argument, concluding, "Even if we were to read that factor as [the appellant] urges, however, we are persuaded that predictability and stability would still be permissible factors for a court to consider as relevant to the child's best interest under the catchall provision" in § 767.41(5)(am)16. *Id.*

¶43 The "catchall provision" referred to in *Lambert* allows a court to consider "[s]uch other factors as the court may in each individual case determine to be relevant." *See id., ¶¶*8, 10; *see also*, WIS. STAT. § 767.41(5)(am)16. Thus, consistent with *Lambert*, even if the circuit court in this case placed more emphasis on "predictability and stability" than on "regularly occurring and meaningful placement" with Ivan, Ivan has not shown that this would amount to an erroneous exercise of discretion, given the court's latitude to consider predictability and stability under the catch-all provision.

¶44 In sum, we conclude that, in awarding sole legal custody to Lacey, the circuit court considered the facts of record, applied the correct legal standard, and used a logical rationale to reach its conclusion. Accordingly, Ivan has not shown that the court erroneously exercised its discretion. *See Koeller*, 195 Wis. 2d at 663-64.

### III. *Physical Placement*

¶45 As stated, the circuit court awarded primary placement of the children to Lacey and placement to Ivan every other weekend throughout the year, with major holidays divided equally. Ivan challenges the court's exercise of discretion regarding placement on two grounds. First, he argues that the court failed to maximize his placement time as required under WIS. STAT. § 767.41(4)(a)2. Second, he contends that the placement awarded to him amounts to twelve-and-one-half percent placement time[8] and that, because this is less than twenty-five percent, the court was required to make a specific finding under the current version of WIS. STAT. § 767.41(6) (2021-22). We discuss and reject these arguments, in turn.

A. Maximizing Placement

¶46 Ivan argues that the circuit court failed to maximize the children's placement as required by WIS. STAT. § 767.41(4)(a)2. Section 767.41(4)(a)2. provides the method by which courts are required to allocate physical placement:

> In determining the allocation of periods of physical placement, the court shall consider each case on the basis of the factors in sub. (5)(am) …. The court shall set a placement schedule that allows the child to have regularly occurring, meaningful periods of physical placement with each parent and that maximizes the amount of time the child may spend with each parent, taking into account geographic separation and accommodations for different households.

---

[8] Because it does not bear on our determination in this case, we have not confirmed the accuracy of this twelve-and-one-half percent figure and instead assume without deciding that it is accurate.

¶47    Our supreme court has interpreted this statutory language in the context of modification to a placement schedule to mean that the general directive of "maximiz[ing] the amount of time the child may spend with each parent … does not trump the other considerations specifically required in the statute." *Landwehr v. Landwehr*, 2006 WI 64, ¶¶14, 18, 291 Wis. 2d 49, 715 N.W.2d 180. (first alteration in original; emphasis omitted).  The circuit court must attempt to maximize a child's time with each parent "within the context of the various other considerations the court is instructed to contemplate under [WIS. STAT. § 767.41]." *Id.*, ¶20.  "The term 'maximize' does not supersede the [circuit] court's discretion to construct a schedule it determines is in the best interest of the child and otherwise in conformity with the intricate dictates of § 767.[41]." *Id.*

¶48    Here, the circuit court articulated its reasoning and consideration of the statutory factors set forth in WIS. STAT. § 767.41(5)(am) to determine the best interests of the children as required by § 767.41(4)(a)2.  The record therefore does not support Ivan's argument that the court failed to maximize his placement time.

¶49    Although not entirely clear, Ivan's argument appears to be predicated on the following assertions.  First, according to Ivan, the circuit court awarded him just twelve-and-one-half percent placement time, less than what he requested.  Second, the court found that both parents had been primary caregivers at different points and that "[t]he kids seem to do well when they are with either parent."  Third, the court did not explicitly address the legislative mandate to maximize placement time with each parent and instead overemphasized predictability and stability in awarding placement, as it did in awarding sole legal custody to Lacey.  These arguments fail to persuade.

¶50 As he does when discussing the circuit court's reliance on stability and predictability in the context of legal custody, Ivan offers no authority for the proposition that, in considering the factors under WIS. STAT. § 767.41(5)(am) for purposes of placement, a court cannot weigh one factor more heavily than another. Indeed, as previously noted, Ivan concedes that "[t]he factors listed in … § 767.41(5)(am) have different weights for every situation." He further acknowledges that "[w]hat a court should do to comply with the requirement to maximize placement is highly fact dependent."

¶51 As previously discussed, in making its physical placement determination, the circuit court determined that the children needed "stability and predictability" because of the fact that "[t]hey lived in quite chaotic and toxic environments while the parents lived together." The court also noted that during the course of the marriage the children had "experienced many living arrangements" and that primary placement with Lacey was warranted so that the children could continue to attend school in Stoughton. Moreover, in adopting the GAL's recommendation to award unsupervised placement every other weekend instead of Lacey's request for supervised placement every other Saturday, the court evidently agreed with the GAL's assessment that Lacey's request would not allow for sufficiently "meaningful" placement under the circumstances.

¶52 In sum, Ivan has failed to show that the circuit court erroneously exercised its discretion by "failing to maximize placement."

B. Less Than Twenty-Five Percent Placement

¶53 Ivan argues that the circuit court failed to enter specific findings of fact to justify its award of less than twenty-five percent of placement time, as required by the current version of WIS. STAT. § 767.41(6) (2021-22). Section

767.41(6) was amended during the course of the divorce proceedings, at the same time WIS. STAT. § 767.41(5)(am) was amended. 2021 Wis. Act 37, §§ 5, 7-8. These amendments went into effect December 1, 2021—after the court entered its order on custody and placement on July 12, 2021, but before entry of the court's February 18, 2022 final judgment of divorce incorporating the custody and placement order. The amendments to § 767.41(6) added the following statutory requirement: "If the court grants physical placement to one parent for less than 25 percent of the time, … the court shall enter specific findings of fact as to the reasons that a greater allocation of physical placement with that parent is not in the best interests of the child." Sec. 767.41(6)(a) (2021-22).

¶54    However, Ivan does not argue, nor does the record suggest, that he raised this argument in the circuit court (for example, in a motion for reconsideration) before the court entered its final judgment of divorce. Therefore, this argument is deemed forfeited. *See* ***Northbrook v. City of Niagara***, 2014 WI App 22, ¶20, 352 Wis. 2d 657, 843 N.W.2d 851; ***State v. Rogers***, 196 Wis. 2d 817, 827, 539 N.W.2d 897 (Ct. App. 1995) ("We will not ... blindside trial courts with reversals based on theories which did not originate in their forum.").[9]

---

[9] To the extent that Ivan suggests the circuit court was required, *sua sponte*, to revisit its custody and placement order based on this new statutory provision prior to incorporating the order into its final judgment of divorce, Ivan offers no authority or developed argument in support of this position. We therefore do not consider this argument. *See* ***State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App.1992). We further point out that, throughout Ivan's briefing of the other issues on appeal, Ivan applies the 2019-20 version of WIS. STAT. § 767.41 that existed at the time the court issued its order on custody and placement. He changes course, however, when it comes to § 767.41(6), arguing that the 2021-22 version of the statute should be applied.

## CONCLUSION

¶55    For the reasons stated, we affirm the circuit court's custody and placement order and the court's final judgment of divorce.

*By the Court.*—Judgment affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5.